McKinney, J.
delivered the opinion of the Court.
The complainant is the widow of Jesse Woodward, who departed this life in Dickson county, in February, 1856, and she seeks by this bill to enforce her rights, as widow, to dower, and a distributive portion of the estate of her deceased husband. It is attempted to repel her, by force of an ante-nuptial marriage contract, alleged to have been entered into between her and said Jesse Woodward; and on this ground, the Chancellor decreed that she was barred of the relief sought by *51 ber bill. The marriage took place on the 5th of December, 1858; the said Jesse Woodward being a widower, of the advanced age of seventy-three years, and the complainant a widow, of the age of forty-five years.
On the day of the marriage, and immediately before it took place, an unsealed paper, of which a copy is exhibited in the record, is alleged to have been executed by the parties, which, after reciting the contemplated marriage, proceeds as follows:
“But, before the rite of matrimony is solemnized, we have made and entered into the following marriage contract: I, the said Jesse Woodward, in case I should die before my said intended wife, agree and bind myself, to loan to my said zvife during her natural life, two negro men, to-wit: — Boston and David; and at her death, the said negro men are to return to my estate, and be disposed of as' I may hereafter direct, or in accordance to the law of distribution and descent. And I, the said Sarah White, agree to claim no other part or portion of the said Woodtuard’s estate, of any description whatever.” This paper purports to have been executed by the complainant, by making her mark, and is attested by two subscribing witnesses. The proof tends to excite suspicion of the fairness of the execution of this paper.
The attesting witnesses were called in separately, at different times. It is shown that the complainant was so illiterate that she could not either read or write; and one of the witnesses states, that he attested the acknowledgment of the execution of the paper, without knowing what were the contents; that it was not read in his presence; and the reason given by *52 Jesse Woodward — who seemed to be in baste to have tbe execution complete — for not baying tbe paper read, was, that tbe complainant abeady knew its contents. Tbe other attesting witness is not positive in bis statement, in regard to reading tbe paper. In answer to tbe question put by the defendants — whether tbe paper was not read by him in presence of tbe parties — be says: “my recollection ' is, at this time, that it was.” Woodward procured this paper to be prepared by bis own attorney, without the knowledge of tbe complainant, and took it with him, to be executed when be went to be married.
Tbe paper was not proved or registered until some two months after tbe marriage. There are various other circumstances in the proof, calculated to induce tbe belief that the complainant was overreached and imposed on, in tbe execution of' said agreement, but in our view of tbe case, it is not material to notice them.
It appears, that at tbe March session of tbe County Court of Dickson, 1856, two paper writings were presented for probate. Tbe first, purporting to be a written will, executed by said Jesse Woodward, on tbe 14th of November, 1886, and duly attested, as required by law. Tbe other, a so-called nuncupative will, made by said Jesse Woodward, in February, 1856, immediately before bis death; both of which papers were admitted to record. Tbe first will was made in tbe lifetime of tbe former wife of Jesse Woodward; and by it, be devises and bequeaths all bis property; real and personal, to bis then wife, Elizabeth Woodward, during life, with remainder to bis brother, Benjamin Woodward.
*53 By the paper called a nuncupative will, the testator directs that bis nepbew, John D. Woodward, shall have bis land, stock of all kinds, household furniture, &c., during life, with remainder to his son, Jesse Woodward.
That his wife, Sarah Woodward, shall’ have “ two negro men, Boston and David, forever;” and that, after payment of debts, his brother, Benjamin Woodward, shall have the residue of his estate — which, from the proof, consisted of twelve slaves and other effects. The testator, it seems, left no issue of either marriage.
The supposed nuncupative will is a mere nullity, wholly inoperative to revoke the prior written will, because not made in conformity to the requirements of the 14th section of the act of 1784, ch: 22. It is not shown, either in the body of the writing, or in the certificate of probate, or otherwise, that the alleged nuncupative will “was reduced to writing in the lifetime of the testator, and read over to him, and approved,” as is expressly made necessary by the Statute, to affect the revocation of a “written will.”
From both of these wills the complainant declared her dissent, and caused the same to be placed of record, in the mode prescribed by law.
In the first answer, which was filed jointly by the defendants, Benjamin Woodward and George W. Brown, —the latter being the administrator with the will annexed — it is expressly insisted by the defendant, Woodward, and without dissent on the part of the defendant, Brown, that the nuncupative will “is inoperative and void.” Nevertheless, they also insist, both in their first and second answers, that the complainant shall be held barred by the marriage contract; and this, too, *54 without even intimating a willingness on tbeir part, that she shall have a life-interest in the two slaves, Boston and David, both of whom are, by name, included in the bequest in remainder to defendant, Benjamin Woodward, by the will of 1836. The question, whether, upon the foregoing facts, the complainant is barred of her rights as widow, in the estate of her deceased husband, is one of no very difficult solution.
We need not trouble ourselves to inquire ■ in what cases a jointure, fairly made before marriage by the husband upon his intended wife, will be an absolute dower. It may be conceded that, the jointure would be good, although it be not absolutely' and completely settled upon the wife by deed, but rests merely in articles, or upon the husband’s covenant before marriage, and the reason for this is obvious.
The jointress, in such case, being regarded as a purchaser of the provision, by the marriage, is entitled,, in that character, to the active aid and protection of a Court of Equity, and may demand a specific execution of such articles or covenant. 1 Bright’s Husband and Wife, 471; and the Court will decree a settlement which will have relation to the period when it ought to have been made. Ibid, 448.
It is likewise admitted, that where an instrument, intended as an ante-nuptial settlement, is final in its character, and the trusts thereby created are clearly and accurately ascertained and declared, so that nothing further remains to be done, according to the intention of the parties, effect will be given to it in equity, if there be nothing else in the case to forbid the interposition of the Court.
*55 The precise line, marking the boundary between ex-, ecutory and executed agreements, is sometimes rather clifficult to be perceived. But no such difficulty exists in the present case. The settlement was not perfected by Woodward, according to the plain intention of the. parties. Something further remained to be done on his part, in order to secure to the' wife the contemplated benefit, and to place it beyond his own power, or those who might succeed him, from throwing any obstacle in the way of the wife’s availing herself of the benefit of' the provision, in the event of her survivorship. Nothing was. done to affect the exclusive legal ownership and dominion over the property by Woodward in his lifetime, or after his death by the legatee under his will of 1836; nothing which, by its own proper force and legal effect, entitled the wife, instantly upon her-husband’s death, to take into possession, and assert a legal title to the two slaves. Nor could the personal representative, after the husband’s death, execute the agreement; because — all other objections aside — the legal title to the slaves on the death of the husband, passed instantly, under the will of 1836, to the defendant, Benjamin Woodward — the life-esfate of the first wife having fallen in.
The attempt to execute the trust by the nuncupated will was simply nugatory, and the case stands as if no such act had been done.
It avails the defendants nothing, to say that the complainant might, in equity, have enforced a specific execution of the agreement, against the personal representative, as well as against the legatee under the will. This is doubtless so; but it is clear' that, as the bus- *56 band failed in bis lifetime, to effectually execute the agreement on bis part, tbe complainant was left to an election after bis death, either to abide by and enforce a specific execution thereof, or to abandon it and claim her legal rights, as widow, in the estate of her husband, as if no such agreement had ever been made. It cannot be, that if the husband had practically abandoned the agreement, the wife, after his death, should be held bound by it. The defendants, in this case, have not put themselves in an attitude, by filing a cross-bill, to ask a decree for specific execution of the agreement, if entitled to do so. But it is clear they have no such relief; the suspicions of unfairness which surround the execution of the paper, would repel them from a Court of Equity. Nor can they resist the relief sought by the complainant, on the ground that she is estopped by her agreement; estoppels are rarely admitted in equity against the truth of the case; and this is one of the cases where such a defense would be received with the least favor.
The decree will be reversed.